UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————— x

LAUREN HUGHES,

                            *Plaintiff,*

           *-against-*

COLLEEN SPATENGA, LISA JACOBSEN and
MICHAEL MCLEOD in their representative capacity as
employees and agents of NASSAU COUNTY
DEPARTMENT OF SOCIAL SERVICES; MARISSA
BLINDER in her representative capacity as employee
and agent of THE SAFE CENTER, LONG ISLAND;
AILEEN NEWBOLD in her representative capacity as
employee and agent of NASSAU COUNTY SPECIAL
VICTIMS UNIT; NASSAU COUNTY DEPARTMENT
OF SOCIAL SERVICES; NASSAU COUNTY
SPECIAL VICTIMS UNIT; NASSAU COUNTY
CHILD PROTECTIVE SERVICES PROGRAM; THE
SAFE CENTER, LONG ISLAND; OFFICE OF THE
NASSAU COUNTY DISTRICT ATTORNEY;
COUNTY OF NASSAU, STATE OF NEW YORK; and
Does 1 through 10,

                          *Defendants.*

———————————————————————— x

Civil Action #:  2:25-cv-1706

COMPLAINT

DEMAND FOR JURY TRIAL

## NATURE OF THE ACTION

1.     This is a civil rights action, pursuant to 42 U.S.C. § 1983, *inter alia*.

2.     Plaintiff Hughes seeks damages to redress the deprivation of rights secured to her under the Fourth and Fourteenth Amendments to the United States Constitution.

3.     Plaintiff Hughes also seeks declaratory relief pursuant to 28 U.S.C. § 2201, injunctive

relief and damages under New York law.

4. This action arises from defendants Nassau County Child Protective Services (hereinafter referred to as "CPS"); Nassau County Department of Social Services (hereinafter referred to as "DSS"); The Safe Center, Long Island (hereinafter referred to as "Safe Center"); Nassau County Special Victims Unit (hereinafter referred to as "SVU"); Office of the Nassau County District Attorney (hereinafter referred to as "NCDA"); and County of Nassau, State of New York (hereinafter referred to as "County") improper and unreasonable conduct leading to the wrongful removal of plaintiff Hughes' minor Child from plaintiff Hughes' home; the continued detention and withholding of Child from plaintiff Hughes without due process, and defendants' actions causing interference with Child and plaintiff Hughes' liberty interests.

5. It will be shown herein, that defendants' conduct in, *inter alia*: conducting an improper investigation of plaintiff Hughes; engaging in conduct leading to Child's removal from plaintiff Hughes' custody; causing negligent and/or intentional misinterpretation of records and evidence; & intentionally withholding exculpatory evidence, caused damages as set forth herein.

## JURISDICTION AND VENUE

6. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1343, which provides original jurisdiction over all actions brought pursuant to 42 U.S.C. § 1983, and 28 U.S.C. § 1331, which provides jurisdiction over all cases brought pursuant to the Constitution and laws

of the United States.

7. The Court has jurisdiction over plaintiff Hughes' state law claims pursuant to 28 U.S.C. § 1367.

8. Venue is proper in the Eastern District of New York under 28 U.S.C. § 1391(b).

9. The acts and conduct complained of herein occurred in substantial part in this District, plaintiff Hughes resides in this District and the defendants maintain their principal place of business in this District.

PARTIES

10. At all times mentioned herein, plaintiff Hughes was and still is a resident of Nassau County, State of New York.

11. Plaintiff Hughes is an individual and Child's natural mother.

12. At the time of the actions complained herein, Child was three years old.

13. Defendant CPS is a department/agency of defendant DSS.

14. Defendant Safe Center is a corporation, doing business in New York.

15. Defendant SVU is a department/agency of defendant NCDA.

16. Defendant County maintains and employs defendants Safe Center, CPS, DSS, SVU & NCDA, which are duly authorized departments/agencies of defendant County, per the applicable sections of defendant County Municipal Corporation Law.

17. At all times mentioned herein, defendant County is and was a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

3

18. Defendants DSS, CPS, Safe Center & SVU are the departments/agencies responsible for investigating reports of suspected child abuse and/or neglect.

19. At all times mentioned herein, defendants Colleen Spatenga and Lisa Jacobsen were employees, independent contractors, agents, servants, etc., of defendants County, DSS & CPS and in doing the things mentioned herein were acting under the supervision of defendants and according to their official duties.

20. At all times mentioned herein, defendant Marissa Blinder was the employee, independent contractor, agent, servant, etc., of defendants Safe Center, County, DSS & CPS and in doing the things mentioned herein was acting under the supervision of defendants and according to her official duties.

21. At all times mentioned herein, defendant Aileen Newbold was the employee, independent contractor, agent, servant, etc., of defendants County, NCDA & SVU and in doing the things mentioned herein was acting under the supervision of defendants County, NCDA & SVU and according to her official duties.

22. At all times mentioned herein, defendants and each of them were the agents of the other defendants and in doing the things alleged herein were acting in the course and scope of and in furtherance of such agency relationship.

23. Defendants are derivatively and vicariously liable for the acts of each other.

24. At all times mentioned herein, defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State of New York and/or County of Nassau and laws of the State of New York.

4

25. The true names and capacities of Does 1 to 10 are currently unknown and plaintiff Hughes will amend this complaint upon ascertaining the true names and capacities of such defendants.

FACTUAL BACKGROUND

26. On March 21, 2022, in <u>Mahoney v. Hughes</u>, Nassau Count Docket # V-03980-19/21C, File # 610358, Child's non-custodial father Ryan Mahoney and plaintiff Hughes signed a custodial agreement, whereby plaintiff Hughes was awarded residential custody and final decision making authority of Child.

27. In the evening of March 25, 2022, Child fell off a small trampoline in his bedroom.

28. On March 26, 2022, as a result of falling off the trampoline, facial bruising appeared and Child was brought to City MD for assessment.

29. The City MD health care professional suspected abuse and made a report to defendants County, CPS & DSS.

30. City MD personnel told plaintiff Hughes to take Child to Cohen's Children Medical Center.

31. Cohen Children Medical Center's health care professional did not agree that Child had been the subject of abuse.

32. Gary Murphy, an employee of defendant County, CPS & DDS, questioned plaintiff Hughes and Child at Cohen's Children Medical Center.

33. It was reported that Child had fallen while playing.

34. Cohen Children Medical Center's health care professionals relayed to Gary Murphy that Child's evaluation and their findings were non-consistent with child abuse.

35. Murphy did not find any exigent circumstances warranting the immediate removal of Child from plaintiff Hughes.

36. Child left Cohen Children Medical Center's with plaintiff Hughes.

37. Defendants demanded that plaintiff Hughes report on March 30, 2022 to defendant Safe Center, where she met with SVU officer Newbold and defendant Spatenga.

38. On or about April 1, 2022, defendants County, CPS & DDS caused an investigation of plaintiff Hughes to be conducted for abuse and neglect of Child.

39. Defendants Spatenga and Jacobsen were the investigators of defendants County, CPS & DDS assigned to Child's investigation.

40. A forensic interview of Child was conducted on April 1, 2022 by defendant Blinder.

41. Defendants instructed/recommended to Mahoney that he file a petition to modify the custody decree that had been ordered in March, 2022 and for an Order of Protection.

42. Mahoney filed said petitions in Nassau County Family Court, Index # V-03980-19/22D (hereinafter referred to as "Custody Case").

43. On April 7, 2022 in the Custody Case, Mahoney was awarded temporary custody of Child pending defendants' investigation.

44. Plaintiff Hughes was ordered to have supervised visitation with Child.

45. This temporary custody decision was based on misstatements, omissions of fact and other wrongful conduct of defendants.

46. On July 21, 2022 defendants County, CPS and DDS filed in Nassau County Family Court

6

a Child Protective Petition, Index # NN-5347-2022 against plaintiff Hughes seeking to have Child declared neglected and seeking additional remedies under Family Law, Article 10 (hereinafter "Neglect Case").

47. The Neglect Case was unnecessary because the Custody Case was pending.

48. The Neglect Case was filed to further harass and cause plaintiff Hughes to suffer emotional distress and financial harm in having to defend the allegations and causing a delay in the Custody Case.

49. On or about October 21, 2022, the Neglect Case was resolved via an ACOD.

50. Given the facts of the Neglect Case, the case should never have been filed and should have been dismissed outright, rather than an ACOD, which was unnecessary.

51. After the Neglect Case ACOD was negotiated, the Custody Case resumed.

52. On February 8, 2023, Mahoney's Custody Case modification petition was determined after trial, with physical custody being retained by plaintiff Hughes.

53. Due to defendants' conduct, plaintiff Hughes was denied residential custody of Child for approximately 11 months.

54. Due to defendants' conduct, plaintiff Hughes hired and paid legal counsel, experts and incurred related legal costs to defend the Custody Case, Neglect Case and Order of Protection at substantial financial costs.

55. Defendants arbitrarily investigated plaintiff Hughes for abuse and neglect of Child, engaged in actions which led to the removal of Child from plaintiff Hughes' custody, dismissed and withheld exculpatory evidence, misstated facts and otherwise contributed to the constitutional violations alleged herein.

1.      INVESTIGATION

56.     Child welfare workers may not investigate abuse and neglect allegations arbitrarily.

57.     To justify a child welfare investigation, there must be reasonable suspicion of child abuse.

58.     Defendants must gather and consider all evidence, including exculpatory evidence.

59.     At all times mentioned herein there were no reported safety concerns regarding plaintiff Hughes and no determinations that Child was unsafe with plaintiff Hughes.

60.     A child may only be removed from his or her parents when there is a court order, exigent circumstances, or consent.

61.     When probable cause for removal dissipates, the child must be returned to his or her parents.

62.     On or about March 26, 2022, an initial report was made to defendant CPS regarding Child.

63.     Based upon information and belief, the initial reporter did not possess sufficient facts from personal knowledge, conditions or circumstances as mandated by NY. Soc. Serv. Law § 413, that Child was an abused or maltreated child.

64.     Defendants were informed that the bruises were the result of Child's fall off a trampoline.

65.     As a result, defendants did not have reasonable cause to suspect that Child was abused or maltreated.

66.     Defendants' abuse investigation regarding Child was unwarranted.

67.     Nevertheless, defendants authorized co-defendants to perform abuse and neglect investigations of Child.

8

68. Proper personnel, *i.e.,* a supervisor, refused to speak with plaintiff Hughes and failed to return plaintiff Hughes' telephone calls and email communications.

69. Defendants were directly involved in the abuse investigation.

70. Defendants ratified the other defendants investigative findings regarding Child.

71. Based upon information and belief, defendants failed to issue any formal reports regarding Child.

72. Defendants arbitrarily pursued an abuse investigation, despite the overwhelming evidence to the contrary: Child repeatedly confirming that the bruises were the result of a fall; Murphy meeting with plaintiff Hughes and Child and being satisfied there was no abuse; and Cohen's Children Medical Center doctors examining Child and determining that the initial abuse report from City MD was unfounded.

73. Based upon information and belief, knowing defendants would be unable to obtain a court order, consent and that there were no exigent circumstances, defendants instructed/recommended that Mahoney file the Custody Case and for an Order of Protection.

74. As a result of defendants' unfounded investigation, plaintiff Hughes lost temporary custody of Child without any fact finding hearing having been held, permanently lost medical decision making rights over Child and Child suffered the trauma of being removed and denied contact with plaintiff Hughes.

75. Due to defendants' actions, plaintiff Hughes and Child were arbitrarily court ordered into therapy.

9

2.     INTERVIEW

76.     On April 1, 2022, defendant Blinder questioned Child.

77.     Child was inappropriately interrogated for 90 minutes.

78.     It was improper to question Child after he had already provided an explanation that satisfied the attending doctors.

79.     According to the Official guidelines set by the Department of Justice's Office of Juvenile Justice and Delinquency Prevention Bulleting:  child forensic interviews should use open-ended questions; young children have difficulty focusing their attention and searching their memory when interviewed; interviewers should be attentive to the possibility that their preconceived ideas may bias the information gathered—particularly if the interview is conducted in an unduly leading or suggestive manner—and should avoid such practices; & the interviewer should be as open-ended and non-suggestive as possible, when introducing the topic of suspected abuse.

80.     Defendant Blinder did not follow the accepted guidelines for a child interview, including, but not limited to: excessive interview length; continuing interview despite Child clearly disengaging; asking aggressive leading questions; & failing to accept Child's answers when he said that he had simply fallen and that he had not been abused.

81.     Based upon information and belief, the interview was being observed live by defendant Spatenga, who later relayed false information regarding the content of the interview.

82.     This false information was utilized in securing the removal of Child from plaintiff Hughes' custody.

10

83. For example, the CPS case notes state that Child stated that plaintiff Hughes' friend Cusack had "locked him in a closet and threw him" and that Child refers to Cusack as "Daddy Monster".

84. These claims were untrue.

85. During the interview, Child stated that he had a dream about being locked in a closet and about a monster.

86. When asked about how he got the bruises on his face, Child told defendant Blinder that he obtained them by falling off his trampoline.

87. Child used the word "faceplant" to describe the fall and when asked what "faceplant" meant, he indicated that it meant "to fall".

88. Defendants subsequently questioned Child's account of the cause of injury by claiming that Child was coached to use the word "faceplant", but was unable to explain what that term meant.

## DEFENDANTS' WRONGFUL CONDUCT

89. Removal of Child was not justified by an imminent risk to Child's life or health.

90. At the time of removal, Child was not in any danger and was being properly cared for by plaintiff Hughes.

91. Child was removed from plaintiff Hughes despite the lack of any evidence that plaintiff Hughes had harmed Child.

92. There was never any justification for separating Child from plaintiff Hughes.

11

93.  The investigation and removal of Child was conducted without following proper legal procedures.

94.  Defendants failed to follow proper legal procedures in engaging in the conduct leading to and resulting in removal of Child from plaintiff Hughes's custody.

95.  Child was not given proper opportunity for packing his belongings, as he was immediately sent to live in the illegal basement apartment of Mahoney; who had a prior CPS indication that was uncontested for inadequate guardianship against Child, a criminal record of domestic violence against plaintiff Hughes, and documented substance abuse issues.

96.  Defendants failed to properly consider and weigh the following exculpatory evidence, *inter alia*: (a) Child informed treating doctors that the injuries were accidently caused by falling off his trampoline; (b) Child stated to defendant Blinder that Child got hurt from falling off trampoline; & (c) a child abuse expert confirmed that the injuries were consistent with falling.

97.  Defendants refused to close and/or withdraw the Neglect Case, which caused the Nassau County Family Court to refuse to return Child to plaintiff Hughes.

98.  Defendants disrupted plaintiff Hughes and Child's familial relationships.

99.  Defendants' instruction/recommendation to Mahoney to file for an Order of Protection and pursue temporary custody before the Family Court was improper and an attempt to circumvent procedural safeguards in place to ensure that defendants' actions are proper.

100. For example, defendants did not have to comply with various safeguards, *inter alia*: informing plaintiff Hughes of her right to apply to the Family Court for the return of

Child (Family Law § 1024); returning Child to plaintiff Hughes' custody, since there was no imminent risk (Family Law § 1026); immediate hearing (Family Law § 1028 & 1033-b); & provide appropriate services as delineated in Family Law § 1028.

101.  Once defendants determined the allegations of abuse and neglect were unfounded and that Child was safe, defendants continued to investigate plaintiff and Child abuse allegations, misstated facts in the investigation, withheld exculpatory evidence, and otherwise contributed to the constitutional violations alleged herein.

1.  LAW VIOLATIONS

102.  Removal of Child and continued withholding of Child from plaintiff Hughes, was the product of an arbitrary and constitutionally deficient child welfare investigation.

103.  Defendants' conduct resulted in orders of supervised visitation, which were unwarranted, as there was no evidence that plaintiff Hughes was a danger to Child.

104.  Defendants failed to consider alternatives, committed due process violations and engaged in conduct which thwarted plaintiff Hughes' right to timely hearings.

105.  Defendants failed to timely assess and report that Child was not abused or neglected per Family Law § 1012.

106.  Defendants failed to timely make and prepare reports concerning Child, which caused a significant delay in custody of Child being reinstated to plaintiff Hughes. Family Law § 1034

13

107. Defendants failed to comply with NY Soc. Serv. Law § 424 & Family Law § 1035 & 1036.

108. Defendants failed to engage in conduct as mandated by NY Soc. Serv. Law § 424, by timely commencing and resolving an appropriate investigation which shall include an evaluation of the environment of the child and timely determine, within sixty days, whether the report is "indicated" or "unfounded" and assist the Court system.

109. Based upon information and belief, defendants failed to comply with the responsibilities imposed on them by NY Soc. Serv. Law § 421, in failing to submit an initial report, a preliminary written report (including evaluation and actions taken or contemplated) progress & follow-up reports.

110. Defendants also failed to complete the investigation within 60 days and issue a report that the allegations were founded or unfounded.

111. Defendants violated due process requirements, including the necessity of a hearing within a specified time frame; acted in bad faith; outside scope of employment of their authority and discharge of their duties; committed willful misconduct; and were grossly negligent.

112. Defendants failed to offer or provide services as described in New York State law.

113. Defendants failed to comply with NY Soc. Serv. Law § 417, by failing to timely commence a proceeding in the Family Court.

114. Defendants did not posses reasonable cause to suspect child abuse or neglect and were not acting in good faith.

115. Defendants' investigation was unconstitutional and allegations of abuse were unfounded and contradicted by available information.

14

116.   Defendants' conduct was shocking, arbitrary, and egregious.

### 2.   CPS PROCEDURES

117.   The Second Circuit has found that parents possess a fundamental liberty interest in the care, custody and management of their children.

118.   Child's removal impinged on plaintiff Hughes' interest in caring and making decisions regarding the care of Child.

119.   Upon information and belief, defendants did not provide its social workers and employees an adequate or reasonable form, protocol, or other method to report and investigate suspected child abuse.

120.   Defendants had a duty to supervise co-defendants, investigate reports of inappropriate behavior on defendants' part, and take appropriate action to safeguard plaintiff Hughes and Child, but failed to.

121.   Due to defendants' conduct, plaintiff Hughes was deprived of a prompt post-deprivation hearing.

122.   While defendants did not file the Custody Case, they inappropriately interfered with an already settled custody case by contacting Mahoney and recommending that Mahoney petition for an order of protection on Child's behalf, as well as a change of custody.

123.   Based Upon information and belief, defendants provided false and/or misleading testimony in the Custody Case regarding, inter alia, the content of Child's interview and plaintiff Hughes' conduct, in order to achieve the result that Child would continue to

temporarily reside with Mahoney.

124. Reasonable efforts to prevent or eliminate the need for removal of child from plaintiff Hughes were not made.

FIRST CLAIM

42 U.S.C. § 1983

125. Plaintiff Hughes repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 124 above, as if fully set forth herein.

126. Defendants, by their conduct toward plaintiff Hughes, violated plaintiff Hughes' rights guaranteed by 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the Constitution of the United States.

127. Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly with malice and with the specific intent to deprive plaintiff Hughes of her constitutional rights.

128. Defendants engaged in actions that they knew or reasonably should have known would cause others to deprive plaintiff Hughes of constitutional rights.

129. Defendants acted or failed to act with a deliberate or reckless disregard of plaintiff Hughes's constitutional rights.

130. Defendants engaged in arbitrary conduct that was shocking to the conscience and/or oppressive.

131. The deprivation of plaintiff Hughes constitutional rights occurred from conduct occurring at defendants' direction, knowledge and/or consent.

132. Parents and children have a well-elaborated constitutional right to live together without governmental interference.

133. Defendants arbitrarily investigated plaintiff Hughes and Child, thereby violating plaintiff Hughes' constitutional right to familial relations.

16

134. Child was removed from plaintiff Hughes for an extended period of time.

135. Plaintiff Hughes was forced to undergo supervised visits with Child.

136. Plaintiff Hughes was deprived of her right to associate with Child and deprived of love and nurturing, etc.

137. Defendants set in motion a series of events that they knew or reasonably should have known would cause the Family Court to order the removal of Child from plaintiff Hughes' custody.

138. Defendants' false and misleading reporting to Family Court, including information relied upon by Family Court, were a cause of the Family Court directing Child to be removed from plaintiff Hughes custody without legal consent or probable cause.

139. Plaintiff Hughes had a constitutionally protected interest in the care, custody, and control of Child.

140. As the biological parent of Child, plaintiff Hughes has a fundamental right to make decisions concerning the care, custody, and control of Child.

141. Defendants deprived plaintiff Hughes of that interest.

142. By engaging in conduct, which resulted in Child being removed from plaintiff Hughes' custody, defendants interfered with plaintiff Hughes' right to care for and make decisions regarding Child.

143. The deprivation occurred without due process of law.

144. Defendants failed to provide plaintiff Hughes with notice, an opportunity to be heard, or a prompt post removal hearing.

145. Based upon information and belief, the investigation of plaintiff Hughes was arbitrary, performed for an improper and illegal purpose and a violation of Due Process.

146. Defendants' investigation should have been completed as soon as possible, concluded and a final report issued within 60 days from when the investigation started.

147. The investigation was not completed as soon as possible and within 60 days of the start of the investigation.

148. The final report was not issued within 60 days of the start of the investigation.

149. In fact, timely reports were never issued by defendants.

150. These failures to timely submit reports, undertake and complete the investigation constitute constitutional violations.

151. As a direct and proximate result of defendants' unlawful conduct, plaintiff Hughes sustained the damages as alleged herein.

152. As a direct and proximate result of the above-described conduct, plaintiff Hughes suffered, and will continue to suffer, great pain of mind and body, shock, emotional distress, discomfort, physical manifestations of emotional distress, embarrassment, loss of self-esteem, disgrace, humiliation, and loss of enjoyment of life.

153. Plaintiff Hughes was prevented from performing daily activities, obtaining the full enjoyment of life and sustained loss of earnings.

154. Plaintiff Hughes also incurred the legal fees and attendant costs in defending herself.

155. As a result of the foregoing, plaintiff Hughes is entitled to and seeks compensatory, special, general, actual, & punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

A. 42 USC § 1983 Fourth Amendment Violation- Unreasonable Seizure

156. The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated ...." U.S. Const. Amend. IV.

157. The strictures of the Fourth Amendment apply to defendants.

158. Causing the removing of a child from his home and family is an unreasonable seizure if it is not pursuant to a court order, supported by probable cause, or justified by exigent circumstances (*i.e.*, defendants have reason to believe that life or limb is in immediate jeopardy).

159. Removal of a child from home is considered a seizure under the Fourth Amendment.

160. As a result of defendants' conduct, Child was removed from his home and plaintiff Hughes' custody.

161. Removal of Child violated plaintiff Hughes' Fourth Amendment rights to be free from unreasonable seizure.

162. Defendants' investigation was improper.

163. Defendants violated the Fourth Amendment as they knew or should have known that the allegations alleged against plaintiff Hughes were unwarranted, false, and/or withheld material information, and nonetheless caused, or conspired to cause, Child's removal from plaintiff Hughes.

B. 42 USC § 1983 Fourteenth Amendment Violation- Violation of due process

164. The Fourteenth Amendment to the United States Constitution provides that no State may "deprive any person of life, liberty, or property, without due process of law ...." U.S. Const. Amend. XIV, § 1.

165. "[T]he right of a man and woman to marry, and to bear and raise their children is the most fundamental of all rights—the foundation of not just this country, but of all civilization." Wisconsin v. Yoder, 406 U.S. 205, 232 (1972).

166. Familial relations are protected liberty interests. Stanley v. Illinois, 405 U.S. 645 (1972).

167. Equally fundamental is the right of a child to be raised and nurtured by his parents.

168. The interest being protected is not only that of plaintiff Hughes in the companionship, care, custody, and management of Child, but Child not being dislocated from the emotional attachments that derive from the intimacy of daily association with plaintiff Hughes.

1. Procedural Due Process

169. Plaintiff Hughes was not afforded adequate procedural due process protection.

170. The constitutional guarantee of procedural due process requires that defendants provide due process before making a decision to infringe upon Child and plaintiff Hughes' life, liberty, or property interest.

171. Procedural due process prohibits defendants' arbitrary and unfair deprivations of protected life, liberty, or property interests without procedural safeguards.

172. Procedural due process requires a proper and prompt investigation and hearing prior to depriving plaintiff Hughes of custody of Child.

173. Plaintiff Hughes' procedural due process claims arise from defendants' conduct in failing to give proper notice; timely conduct a hearing, investigation and report; and misrepresenting the facts of the investigation, *etc*.

174. Plaintiff Hughes claims that defendants' conduct in depriving plaintiff Hughes of a protected liberty interest goes beyond mere negligence and is grossly negligent, deliberately indifferent, and/ or intentional.

175. Plaintiff Hughes' parental rights cannot be denied without a proper and timely

investigation and hearing.

176. Child's right to be nurtured by plaintiff Hughes cannot be denied without a proper hearing.

177. Defendants deprived plaintiff Hughes of due process by: engaging in conduct leading to Child's removal from plaintiff Hughes' custody without proper cause; failing to conduct an adequate and prompt investigation and timely and proper hearing; Child being removed based on defendants' false and misleading statements; defendants' failure to timely prepare, file and submit investigatory reports; defendants' statements provided to the Family Court contained false and misleading information that the Court relied upon when ordering the continued withholding of Child from plaintiff Hughes, *etc.*

178. Defendants violated plaintiff Hughes due process rights by misrepresenting facts and withholding exculpatory evidence in order to obtain the removal of Child from plaintiff Hughes.

179. Defendants' misstatements of facts and concealment of exculpatory evidence caused the illegal separation of Child from plaintiff Hughes.

2.     Substantive Due Process

180. The right of familial association is included in the Fourteenth Amendment substantive due process right of freedom of intimate association.

181. The Supreme Court has long recognized, as a component of "substantive" due process, that parents have a liberty interest in familial relations, which includes the right to

21

"establish a home and bring up children" and "to control the education of their own."

Meyer v. Nebraska, 262 U.S. 390 at 399 (1923).

182. Substantive due process protects individuals from arbitrary government intrusions by requiring a reasonable basis or justification for such actions.

183. Plaintiff Hughes and Child have a substantive right under the Due Process Clause to remain together without coercive interference of defendants.

184. Defendants deprived plaintiff Hughes of a protected liberty interest, the right to custody of Child.

185. Plaintiff Hughes' substantive due process claims are asserted because Child's removal interferes with familial associational rights and/or liberty interests.

C.      42 USC  § 1983 Monell (deprivation of constitutional rights under state law)

186. Plaintiff Hughes asserts this claim against defendants for deprivation of constitutional rights under color of state law.

187. Based upon information and belief, Child's removal from plaintiff Hughes was conducted pursuant to defendants' policies, customs and/or practices that violate plaintiff Hughes' constitutional rights.

188. Defendants' conduct was committed by co-defendants who were acting under color of state law and such conduct deprived plaintiff Hughes of rights, privileges, or immunities secured by the Constitution and laws of the United States.

189. Plaintiff Hughes alleges that defendants have policies, customs and/or practices

encouraging wrongful removal of children without a proper and adequate investigation, by utilizing outdated and improper investigation techniques, by failing to timely prepare, file and submit reports, *etc.*

190. Based upon information and belief, defendants' failure to train their employees/agents evidences an indifference to plaintiff Hughes and those similarly situated.

191. The injuries alleged herein were caused by defendants' execution of those policies, customs and/or practices.

192. Defendants knowingly selected unqualified personnel and failed to train them in proper investigation and reporting techniques, which caused the injuries as alleged herein.

193. Defendants' actions were deliberate and evidence a conscious indifference in pursuit of defendants' policies, customs and/or practices.

194. The aforementioned customs, policies, usages, practices, procedures and rules of defendants included, but were not limited to, the inadequate screening, hiring, retaining, training and supervising of its employees that was the moving force behind the violation of plaintiff Hughes' rights as described herein.

195. As a result of defendants' failure to properly recruit, screen, train, discipline and supervise their employees and agents, defendants tacitly authorized, ratified and were deliberately indifferent to, the acts and conduct complained of herein.

196. Defendants knew of an obvious risk regarding the likely violation of individuals' rights absent adequate recruitment, screening, training, discipline and supervision of its employees and agents, yet was deliberately indifferent to the same.

197. The foregoing customs, policies, usages, practices, procedures and rules of defendants

constituted deliberate indifference to plaintiff Hughes' safety, well-being and constitutional rights.

198. The foregoing customs, polices, usages, practices, procedures and rules of defendants were the direct and proximate cause of the constitutional violations suffered by plaintiff Hughes as described herein.

    D.    42 USC § 1983 malicious prosecution and abuse of process claim

199. Defendants' investigation, instruction to Mahoney to file the Custody Case and Order of Protection and filing of the Neglect Case was improper and unwarranted.

200. Defendants' conduct violated plaintiff Hughes' constitutional rights.

201. Defendants' conduct was an abuse of process and constitutes malicious prosecution.

202. Plaintiff Hughes requests an injunction preventing defendants from future unlawful removals of Child from plaintiff Hughes' custody.

    E.    42 USC § 1983 Failure to intervene

203. Defendants either committed the aforementioned unlawful conduct, or they observed such conduct, had an opportunity to prevent the unlawful conduct, had a duty to intervene and prevent such conduct and failed to intervene.

204. Accordingly, defendants failed to intervene in violation of the Fourth and Fourteenth

Amendments of the United States Constitution.

205.  Defendants' unlawful actions, which were committed under color of state law, were done willfully, knowingly, with malice and with the specific intent to deprive plaintiff Hughes of her constitutional rights.

SECOND CLAIM

INTENTIONAL/NEGLIGENT INTERFERENCE WITH CUSTODIAL RELATIONS AND ENGAGING IN CONDUCT THAT LEAD TO THE WRONGFUL REMOVAL OF CHILD FROM PLAINTIFF HUGHES' CUSTODY.

206.  Plaintiff Hughes repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 205 above, as if fully set forth herein.

207.  Child's removal from plaintiff Hughes custody was unwarranted and conducted without following proper legal procedure.

208.  Defendants intentionally and/or negligently engaged in actions which interfered with plaintiff Hughes' familial relations.

209.  Defendants intentionally and/or negligently engaged in conduct which lead to Child being removed from plaintiff Hughes custody for an extended period of time.

210.  Defendants intentionally and/or negligently engaged in conduct which lead to plaintiff Hughes being forced to engage in supervised visitation with Child.

211.  Plaintiff Hughes has experienced severe emotional distress, including anxiety and depression, due to the separation from Child.

212. As a direct and proximate result of defendants' conduct, plaintiff Hughes sustained the damages as alleged herein.

213. As a result of the foregoing, plaintiff Hughes is entitled to and seeks compensatory, special, general, actual, & punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

THIRD CLAIM

NEGLIGENT HIRING, SUPERVISION AND/OR DIRECTION

214. Plaintiff Hughes repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 213 above, as if fully set forth herein.

215. Upon information and belief, defendants did not adequately train its employees and caseworkers to investigate and report suspected child abuse.

216. Defendants failed to timely investigate and report its finding regarding Child.

217. As a result of such failure, plaintiff Hughes was denied temporary custody of Child.

218. Based upon information and belief, defendants as required by Social Services Law, failed to provide its employees with written information explaining the reporting requirements and statutory guidelines of Social Services Law as it pertains to investigations and reporting.

219. Defendants failed to conduct a continuing publicity and education program for local department staff, which included, but not limited to, responsibilities, obligations and

powers under the law, as well as the diagnosis of child abuse and maltreatment, the procedures of the child protective service and Family Court and the prevention, treatment and remediation of abuse and maltreatment of children.

220. Child's removal from plaintiff Hughes' custody occurred as a direct result of the unconstitutional policies, customs or practices of defendants, including, without limitation, the inadequate screening, hiring, retaining, training and supervising of its employees and agents.

221. Defendants knew that there was an obvious risk that their employees and agents would violate an individual's constitutional rights in the manner complained of here absent adequate training.

222. Defendants' conduct and actions permit an inference that the defendants inadequately trained co-defendants and proximately caused the constitutional violations that plaintiff Hughes suffered.

223. Similarly, co-defendants' failure to intervene to stop the violations despite having the opportunity to do so further permits a reasonable inference that defendants failed to adequately train their employees and agents to know whether such conduct was justified.

224. Defendants' actions and omissions permit an inference that defendants failed to train their employees and agents on the subject and shows that defendants' conduct constituted unreasonable misconduct in violation of State law and the Fourth and Fourteenth Amendments.

225. As a result of defendants' actions against plaintiff Hughes and the other defendants' failure to intervene despite having a reasonable opportunity, it can be inferred that

defendants failed to train its employees/agents regarding the need not to violate a person's civil rights through investigations, failing to timely report, malicious prosecution and unreasonable searches.

226. Assuming arguendo, that defendants have some policy to train employee/agents regarding investigations, reporting, malicious prosecution, etc., (at this stage, plaintiff Hughes has no knowledge as to the fact or substance of any such training), plaintiff Hughes alleges that the circumstantial proof described above demonstrates that the policy was either not implemented or that it was inadequately implemented due to defendants' apparent lack of awareness of applicable Fourth Amendment and/or reasonableness limitations pertaining to investigations, reporting, malicious prosecution, etc.

227. Plaintiff Hughes also alleges due to so many employees/agents apparent lack of awareness of proper investigation and reporting techniques, malicious prosecution and Fourth Amendment violations, that defendants' failure to train manifested through a failure to verify whether any alleged training was effective through attendee testing or other means.

228. Plaintiff Hughes alleges that her experience with defendants and their actions, omissions, conduct, misrepresentations , and failure to intervene shows that there was no meaningful verification, for instance, that any training substance or administration actually stablished the intended education.

229. The aforesaid incident is not an isolated incident.

230. The existence of the aforesaid unconstitutional customs and policies may be inferred from repeated occurrences of similar allegations of wrongful conduct by defendants as

28

documented in civil rights actions filed against defendants in federal and state courts and citizen complaints.

231. Defendants alone are in possession of the number and nature of such citizen complaints that are settled pre-litigation, or that are made without connection to any claim for damages.

232. In light of the foregoing, defendants are aware that employees/agents, including the defendants here, face difficult choices and that adequate training would reduce the risk of constitutional violations occurring in this context by helping employee/agents not make the wrong choices.

233. Moreover, on information and belief, defendants were aware, prior to the incident, that co-defendants lacked the objectivity, temperament, maturity, discretion and disposition to be employed in the area of child neglect/abuse.

234. Despite such notice, defendants retained co-defendants and failed to adequately train and supervise them.

235. All of the aforementioned acts of defendants, their agents, servants and employees were carried out under color of state law.

236. All of the aforementioned acts, deprived plaintiff Hughes of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the United States Constitution, and in violation of 42 U.S.C. § 1983.61, etc.

237. The acts complained of were carried out by the defendants in their capacities as employees/agents of co-defendants, with the entire actual and/or apparent authority

attendant thereto.

238. The acts complained of were carried out by defendants in their capacities as employees/agents of co-defendants, pursuant to the customs, usages, practices, procedures and the rules of co-defendants, all under the supervision of high level officers and officials.

239. Defendants, collectively and individually, while acting under color of state law, engaged in conduct that constituted a custom, usage, practice, procedure or rule of the respective municipality/authority, which is forbidden by the United States Constitution.

240. As a direct and proximate result of defendants' conduct, plaintiff Hughes sustained the damages as alleged herein.

241. As a result of the foregoing, plaintiff Hughes is entitled to and seeks compensatory, special, general, actual, & punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.


FOURTH CLAIM


GROSS NEGLIGENCE AND MISCONDUCT BY SOCIAL SERVICES OFFICIALS


242. Plaintiff Hughes repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 241 above, as if fully set forth herein.

243. The actions alleged herein constitute gross negligence by defendants.

30

244.    Defendants conduct, actions, and omissions clearly evidences defendants' misconduct in performing their duties.

245.    As a direct and proximate result of defendants' conduct, plaintiff Hughes sustained the damages as alleged herein.

246.    As a result of the foregoing, plaintiff Hughes is entitled to and seeks compensatory, special, general, actual, & punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

FIFTH CLAIM

STATE LAW CLAIM FOR INFLICTION OF EMOTIONAL DISTRESS

247.    Plaintiff Hughes repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 246 above, as if fully set forth herein.

248.    Defendants engaged in extreme and outrageous conduct, which was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency as to be regarded as atrocious and utterly intolerable in a civilized community.

249.    Defendants intended to cause, or disregarded a substantial probability of causing, severe emotional distress.

250.    There is a causal connection between defendants' conduct and plaintiff Hughes' injury.

31

251. As a direct and proximate result of defendants' conduct, plaintiff Hughes suffered severe emotional distress and sustained the damages as alleged herein.

252. As a result of the foregoing, plaintiff Hughes is entitled to and seeks compensatory, special, general, actual, & punitive damages in an amount to be fixed by a jury, plus reasonable attorneys' fees, costs and disbursements of this action.

SIXTH CLAIM

DECLARATORY RELIEF

253. Plaintiff Hughes repeats, reiterates and realleges each and every allegation contained in paragraphs 1 through 252 above, as if fully set forth herein.

254. Defendants' conduct, failures and omissions, show that there is an actual and ongoing controversy that impacts plaintiff Hughes and the public in general, regarding defendants ability to interfere with the parent-child relationship.

255. Plaintiff Hughes requests a declaratory judgment that: (i) removal of Child was unlawful; (ii) defendants' failed to complete a proper and prompt investigation; & (iii) defendants failed to timely prepare and submit reports concerning the investigation, etc.

256. Defendants must be prevented from suggesting to a parent that he/she file an application to remove custody from a parent under investigation for neglect/abuse.

257. Plaintiff Hughes seeks preliminary and permanent injunctive relief against defendants.

258. Defendants have the ability to update plaintiff Hughes' records pertaining to the investigation.

259. Defendants have the ability to update plaintiff Hughes' records to remove and correct any statements to the effect that plaintiff Hughes neglected or abused Child.

260. Defendants have the ability to update plaintiff Hughes' records to remove and correct any statements to the effect that Child was the victims of neglect or abuse.

261. There is no adequate remedy at law for defendants' improper investigation, false recording and reporting of plaintiff Hughes alleged neglect and abuse of Child.

262. Correcting the records would not be burdensome or costly.

PRAYER FOR RELIEF

WHEREFORE, plaintiff Hughes respectfully requests the following relief:

A.    An order entering judgment for plaintiff Hughes against defendants on each of the claims for relief;

B.    Awards to plaintiff Hughes of compensatory general, special, actual, and/or statutory damages against all defendants, jointly and severally, for their violation of State law, Fourth and Fourteenth Amendment rights, the amount to be determined at jury trial;

C.    Awards to plaintiff Hughes of punitive damages against defendants on the basis of their conscious wrongdoing and callous indifference to plaintiff Hughes' constitutional rights and welfare, the amount to be determined at jury trial;

D.    Declaratory judgment that: (i) removal of Child was unlawful; (ii) defendants' failed to complete a proper and prompt investigation; & (iii) defendants failed to timely prepare and submit reports concerning the investigation, etc.;

E.    Declaratory judgment that defendants correct the records as set forth herein;

F.    Declaratory judgment and injunction that defendants: (i) recruit, screen, train, discipline and supervise its employees and agents and adequately train its employees and caseworkers to investigate and report suspected child abuse; (ii) provide its employees with written information explaining the reporting requirements and statutory guidelines of Social Services Law as it pertains to investigations and reporting; (iii) conduct a continuing publicity and education program for local department staff, including, but not limited to, responsibilities, obligations and powers under the law, as well as the diagnosis of child abuse and maltreatment, the procedures of the child protective service and family court and the prevention, treatment and remediation of abuse and maltreatment of children; (iv) train and supervise its employees/agents regarding the need not to violate person's civil rights through investigations, failing to timely report, malicious prosecution and unreasonable searches; & (v) be prohibited from recommending/suggesting or discussing with a parent/guardian that they file an application to modify and/or restrict a co-parents' custody rights;

G.      Injunction preventing defendants from engaging in activities which violate the constitutional rights of persons as set forth herein; and

H.      Awards to plaintiff Hughes of the costs of this action, including reasonable attorneys' fees; together with such other and further relief as the Court may deem just and proper.


                                JURY DEMAND


        Plaintiff Hughes respectfully demands a trial by jury of all issues in the matter pursuant to Federal Rule of Civil Procedure (" FRCP" ) 38.



Dated:   Floral Park, New York               Wurzel Law Group, PLLC.
          March 25, 2025

                                              By: _____
                                                      Glenn J. Wurzel, Esq.
                                              *Attorney for plaintiff Lauren Hughes*
                                              249-12 Jericho Turnpike, Suite 230
                                              Floral Park,  New York 11001
                                              (516) 481-7617   Ext. 23
                                              Email: gjw@wurzelaw.com